# EXHIBIT 1

## Motion to Seal

# EXHIBIT 1

1  JOSHUA A. SLIKER, ESQ.
   Nevada Bar No. 12493
2  HILARY A. WILLIAMS, ESQ.
   Nevada Bar No. 14645
3  **JACKSON LEWIS P.C.**
   300 S. Fourth Street, Ste. 900
4  Las Vegas, Nevada 89101
   Telephone: (702) 921-2460
5  Email: joshua.sliker@jacksonlewis.com
6  Email: hilary.williams@jacksonlewis.com

7  *Attorneys for Petitioners Allegiant Travel Co.,*
8  *and Allegiant Air, LLC*

9              **UNITED STATES DISTRICT COURT**

10                  **DISTRICT OF NEVADA**

11 ALLEGIANT TRAVEL COMPANY, a Nevada      Case No.:
   corporation; ALLEGIANT AIR, LLC, a Nevada
12 limited liability company,
13                                          **PETITIONERS' MOTION FOR LEAVE**
                   Petitioners,             **TO REDACT OR FILE CERTAIN**
14                                          **DOCUMENTS UNDER SEAL**
   vs.
15
   JASON W. KINZER, an individual,
16
                   Respondent.
17

18        Petitioners ALLEGIANT TRAVEL COMPANY and ALLEGIANT AIR, LLC (together,

19 "Allegiant"), by and through their attorneys, the law firm of Jackson Lewis P.C., hereby move the

20 Court for an order sealing and/or redacting the Application to Confirm Arbitration Award and Enter

21 Judgment (the "Application") and related exhibits. This Motion is based on Local Rule IA 10-5,

22 the Memorandum of Points and Authorities attached hereto, and any other argument the Court

23 allows.

24              **MEMORANDUM OF POINTS AND AUTHORITIES**

25                   **I.     INTRODUCTION**

26        Allegiant seeks leave to: (1) redact portions of the Application and Exhibit 6 of the

27 Application (the Amended Award) and (2) seal Exhibit 2 of the Application (the Settlement

28 Agreement). Good cause and compelling reasons exist to redact and/or seal these documents

because, as discussed below, the harm to the Allegiant and Respondent Jason Kinzer outweighs the public's right to access the Parties' confidential information and documents. Specifically, Allegiant requests to seal or redact the following:

| ECF No. | Document | Specific Page / Lines to be Sealed or Redacted |
|---|---|---|
| 1 | Application to Confirm Arbitration Award | Various portions of 1:27-28; 2:1-2, 3-4, 5-7, 15-17, 20, 21, 22-23, 24-26, 27; 3:1-2, 4-6, 8, 16-17; 4:16-17, and 23 |
| 1-2 | Settlement Agreement | Entire Document |
| 1-6 | Amended Award | Pages 1-8 until § "Award and Protective Order" |
|  | Petitioners' Motion for Leave to Redact or File Certain Documents Under Seal | Various portions of 5:5-11, 23; 7:3-5, 6-10, 11-23; 8:1-18, 19-22, 23-28; 9:1-5; 10:5, and 19-20 |

## II.   LEGAL ARGUMENT

### A.  Standard for Sealing and Redacting Documents.

"'Throughout our history, the open courtroom has been a fundamental feature of the American judicial system.'" *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983)); *see Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotation marks and citation omitted) ("Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents."). Indeed, "'[b]asic principles have emerged to guide judicial discretion respecting public access to judicial proceedings. These principles apply as well to the determination of whether to permit access to information contained in court documents because court records often provide important, sometimes the only, bases or explanations for a court's decision.'" *Id.* Nonetheless, although there is a strong presumption of public access to judicial records, the presumption can be overcome. *See Kamakana v*, 447 F.3d at 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

There are two possible standards a party must address when it seeks to file a document under seal: the compelling reasons standard or the good cause standard. *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 38, 196 L. Ed. 2d 26 (Oct. 3, 2016). Under the compelling reasons standard, "a court may seal records only when it finds

'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1179). The court must "'conscientiously balance[ ] the competing interests of the public and the party who seeks to keep certain judicial records secret.'" *Id.* "What constitutes a 'compelling reason' is 'best left to the sound discretion of the trial court.'" *Id.* (quoting *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 599, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978)). "Examples include when a court record might be used to 'gratify private spite or promote public scandal,' to circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's competitive standing.'" *Id.*

The good cause standard, on the other hand, is the exception to public access that has been typically applied to "sealed materials attached to a discovery motion unrelated to the merits of the case." *Id.* (citation omitted). "The 'good cause language comes from Rule 26(c)(1), which governs the issuance of protective orders in the discovery process: The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Id.* However, "[t]he 'good cause' standard is not limited to discovery." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). "Non-dispositive motions are often unrelated, or only tangentially related to the underlying cause of action, and, as a result, the public's interest in accessing dispositive materials does not apply with equal force to non-dispositive materials." *Id.* (internal citations and quotations omitted). Thus, given "the weaker public interest in non-dispositive materials," the court applies the "good cause' standard when parties wish to keep them under seal." Indeed, "[a]pplying the 'compelling interest' standard under these circumstances would needlessly 'undermine a district court's power to fashion effective protective orders.'" *Id.* (quoting *Foltz*, 331 F.3d at 1135).

The Ninth Circuit has clarified that the key in determining which standard to apply is whether the documents proposed for sealing accompany a motion that is "more than tangentially related to the merits of a case." *Center for Auto Safety*, 809 F.3d at 1101. "If that is the case, the compelling reasons standard is applied. If not, the good cause standard is applied." *Caballero v. Aranas*, No. 3:19-cv-00079-MMD-WGC, 2021 U.S. Dist. LEXIS 110784, at *2-3 (D. Nev. June 14, 2021).

Here, the "good cause" standard should apply because the considerations of open access necessary to illustrate the "bases or explanations for [the] court's decision" are minimal. *Oliner*, 745 F.3d at 1025. In contrast to a motion for summary judgment where the court considers the moving papers and exhibits to reach a decision, the court's review of an application to confirm an arbitration award is "extremely limited." *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003). As the court in *Simon v. Maple Beach Ventures LLC* recognized, "[t]here is nothing malleable about [Section 9 of the Federal Arbitration Act's use of] 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." No. 21-cv-01005-PJH, 2021 U.S. Dist. LEXIS 46978, at *5 (N.D. Cal. Mar. 12, 2021) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008)).

Accordingly, where, as here, the time for Respondent to challenge the arbitration award has expired, the court's role is to determine whether it has jurisdiction to decide the Application and that the statutory requirements have been met.[1] *See* Application, 4:22-5:16, ECF No. 1. If both conditions have been satisfied, the Court is required to confirm the award. The public will be able to discern from the record the Court's decision regarding jurisdiction and the statutory requirements as Allegiant does not seek to redact or seal material related to those issues.

Nonetheless, because there is a lack of "explicit guidance" as to whether an application to confirm an arbitration award requires a showing of good cause or compelling reasons, Allegiant discusses both below. *See In re NSA Telcoms. Records Litig.*, 2007 U.S. Dist. LEXIS 14473, at *44 (N.D. Cal. Feb. 20, 2007) (noting a "lack of explicit guidance on this issue").

---

[1] Under the FAA, when a party to an arbitration applies for confirmation of the arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the Act]." 9 U.S.C. § 9; *see also Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010). If a party seeks to vacate an arbitration award, it must serve the opposing party with notice of its intent to do so within three months after the award is filed or delivered. *Stevens v. Jiffy Lube Int'l, Inc.*, 911 F.3d 1249, 1251-52 (9th Cir. 2018); 9 U.S.C. §12. Failure to do so results in the permanent waiver of all possible defenses. *Sheet Metal Workers Int'l Ass'n, Local No. 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 483 (9th Cir. 1983). "Under the [FAA], confirmation is required even in the face of erroneous findings of fact or misinterpretations of law." *Kyocera Corp.*, 341 F.3d at 997 (internal quotation marks omitted). In sum, a court's review of an arbitration award under the FAA "is both limited and highly deferential." *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003) (internal quotation marks omitted).

**B.  Good Cause and Compelling Reasons Exist to Seal the Settlement Agreement.**

There is good cause and compelling reasons to seal the Settlement Agreement. "First, there's the nature of the agreement itself"—it is a private contract between private parties that were entered into without the involvement of any court system. *Mayorga v. Ronaldo*, No. 2:19-cv-00168-JAD-CWH, 2019 U.S. Dist. LEXIS 128387, at *8 (D. Nev. July 31, 2019). Second, "confidentiality is a material term of the settlement agreement" as the parties expressly agreed that:



ECF No. 1-2, ¶ 3(a), p. 3. For example, the confidentiality of a settlement agreement outweighs the public's right to access when confidentiality is a material term of the settlement agreement; to rule otherwise would discourage settlements. *See Friedman v. United States*, No. 2:18-cv-00857-JCM-VCF, 2020 U.S. Dist. LEXIS 70474, at *8 (D. Nev. Apr. 22, 2020) (citing *United Rentals, Inc. v. Ahern Rentals, Inc.*, No. 2:12-cv-01876-JCM-VCF, 2012 WL 5418355, at *1 (D. Nev. Nov. 2, 2012) (noting that courts failing to support the parties' reliance on secrecy works an injustice on litigants and makes "future settlements predicated upon confidentiality less likely")). Third, the Settlement Agreement has remained confidential and indeed Allegiant has proactively enforced confidentiality through arbitration and now the instant proceeding. *See, generally*, *Mayorga*, 2019 U.S. Dist. LEXIS 128387, at *8.

Additionally, because the Parties would not have entered into the Settlement Agreement absent an agreement as to its confidentiality, the confidentiality of the Settlement Agreement's terms outweighs the public's right to access it. ECF No. 1-2 at ¶ 3(a); *Friedman*, Case No.: 2:18-cv-00857-JCM-VCF, at *5; *United Rentals, Inc.*, No. 2:12-cv-01876-JCM-VCF, 2012 WL 5418355, at *1; *see also Phillips ex rel. Estates of Byrd*, 307 F.3d 1206, 1212 (9th Cir. 2002) (citing *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 455 (N.D.N.Y. 1999) (granting protective order to protect confidentiality of settlement agreement); *Kalinauskas v. Wong*, 151

1  F.R.D. 363, 365-67 (D. Nev. 1993) (same) as examples of trial courts granting protective orders to
2  protect confidential settlement agreements).

3  Indeed, the public interest favors protecting the confidentiality of settlements. "Confidential
4  settlements benefit society and the parties involved by resolving disputes relatively quickly, with
5  slight judicial intervention, and presumably result in greater satisfaction to the parties. Sound
6  judicial policy fosters and protects this form of alternative dispute resolution." *Id.* at 365; *see also,*
7  *Orquiza v. Walldesign, Inc.*, No. 2:11-cv-01374-JCM-CWH, 2014 U.S. Dist. LEXIS 127393, at *6-
8  7 (D. Nev. Sep. 10, 2014); *Flynn v. Portland General Electric Corp.*, 1989 U.S. Dist. LEXIS 11219,
9  1989 WL 112802 (D. Or. Sept. 21, 1989) (explaining that the strong public policy in favor of
10 settling disputed claims "dictates that confidentiality agreements not be lightly abrogated," and
11 granting a protective order to prevent discovery into a settlement agreement in an age discrimination
12 case that designated as confidential all case related information and documents, not just the
13 settlement agreement itself)).

14 In *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D.Nev. 1993), the court stated that the public
15 interest favors judicial policies which promote the completion of litigation, the finality of prior suits
16 and the secrecy of settlements when desired by the settling parties. The court further stated:

> Confidential settlements benefit society and the parties involved by resolving disputes relatively quickly with slight judicial intervention, and presumably result in greater satisfaction to the parties. Sound judicial policy fosters and protects this form of alternative dispute resolution. *See, e.g.* Fed.R.Evid. 408 which protects compromises and offers to compromise by rendering them inadmissible to prove liability. The secrecy of a settlement agreement and the contractual rights of the parties thereunder deserve court protection. *Flynn v. Portland Gen. Elec. Corp.*, 1989 WL 112802, 58 U.S.L.W. 2243, 50 Fair. Empl. Prac. Cas. (BNA) 1497 (D.Or. 1989) (party seeking discovery about previously settled case must identify specific information sought and why such information cannot be obtained another way; "the strong public policy favoring settlement of disputed claims dictates that confidentiality agreements regarding such settlements not be lightly abrogated").

*Id.*, 151 F.R.D. at 365.

Additionally, allowing public disclosure of the Settlement Agreement (ECF No. 1-2) would

"promote public scandal."[2] *Ctr. for Auto Safety*, 809 F.3d at 1097 (An example of a "compelling reason" to warrant sealing is when a "court record might be used to "gratify private spite or promote public scandal[.]"). The Settlement Agreement was the culmination of three years of protracted litigation in *Jason Kinzer v. Allegiant Air, LLC, et al.*, Case No. A-15-727524-C, in the Eighth Judicial District Court, Clark County, Nevada, (the "Underlying Action").[3] The Underlying Action concerned Mr. Kinzer's alleged conduct on June 8, 2015 while serving as the Captain of Allegiant Air Flight No. 864 from St. Petersburg, Florida to Hagerstown, Maryland. Shortly after takeoff, one of the flight attendants reported smelling a burning rubber odor in the cabin. Mr. Kinzer made the decision to return the plane to St. Petersburg airport and, once on the ground, ordered the evacuation of the aircraft during which a number of people suffered injuries.

After investigating the incident, Allegiant Air, Mr. Kinzer's then-employer, concluded that the evacuation was unwarranted, and that Plaintiff's actions put the safety of passengers and crew in jeopardy. When it presented these findings to Mr. Kinzer, Allegiant Air contended that he refused to accept responsibility and maintained that he would not have changed his decision-making in any manner if faced with similar circumstances in the future. In Allegiant Air's view, Mr. Kinzer's refusal to consider alterative courses of conduct, which Allegiant Air contended would have avoided the passenger injuries, raised doubts that Mr. Kinzer would follow established emergency procedures and utilize all available resources when dealing with unexpected circumstances in the future. As a result, Allegiant Air contended that Mr. Kinzer had not only performed poorly, but posed a safety risk in the future, and terminated his employment on July 23, 2015.

Mr. Kinzer viewed the conclusions reached by his employer differently. In his view, he was confronted with a hazardous situation and had to make potentially life-or-death decisions in a matter of seconds. When he tried to get additional information from flight attendants and ground crew,

---

[2] Scandal has been defined as "[1] a disgraceful or discreditable action, circumstance, etc. [2] an offense caused by a fault or misdeed. [3] damage to reputation; public disgrace. [4] defamatory talk; malicious gossip. [5] a person whose conduct brings disgrace or offense." *Armstrong v. Shirvell*, No. 2:11-CV-11921, 2012 U.S. Dist. LEXIS 203896, at *21 n.10 (E.D. Mich. June 7, 2012).

[3] Petitioners apprise the court of the events and circumstances at issue in and surrounding the Underlying Action simply to illustrate the considerations at play leading to the Settlement Agreement.

their responses were inconclusive and did not establish there was no further risk to the aircraft and its passengers and crew. Concerned with the risk of fire combined with his training which instilled in him just how deadly fire in a plane can be, Mr. Kinzer contended he made the best decision based on the information available to him under difficult circumstances. After all, at the end of the day, he was responsible for the safety of over 100 passengers and crew on board the flight, and he found it incredible that his decision making was being questioned when he did what he felt was necessary to keep people safe.

The narratives crafted by the parties set the stage for a sensational trial. On one side was an airline that alleged it fired a pilot it believed was dangerous because he refused to accept constructive criticism which could result in deadly decision making in the cockpit. On the other side was a pilot who alleged that he had been fired for saving over 100 lives because he hurt his employer's bottom line by ordering an evacuation that cost tens of thousands of dollars. From the day Mr. Kinzer filed the Complaint, his story captivated the news media. He appeared on ABC's Good Morning America, CBS's Morning Show, 60 Minutes, and in countless other national print outlets. Over time, Mr. Kinzer's narrative morphed to include far-reaching allegations Allegiant Air prioritized profit over safety which led it to neglect maintenance and repairs on its planes which resulted in unsafe planes flying each day.

Each time these new events occurred, Allegiant Air received customer requests to cancel travel and there appeared to be a measurable impact on Allegiant Travel's stock price. Suffice to say that the case was contentious and consumed a significant amount of the parties' time and efforts over the course of three years. Indeed, in 2017 alone, the undersigned counsel traveled over 100,000 miles to various depositions, discovery hearings, witness interviews, and mediations associated with the Underlying Action. At one point, there were approximately six different cases active in courts across the country all devoted to various discovery issues in the Underlying Action.

To say the settlement in the Underlying Action was hard-won is an understatement. Nonetheless, each party came to the table and decided to put the matter to rest. In doing so, confidentiality was necessary to prevent further harm to the reputations and embarrassment of the parties. On one hand, the harm to Allegiant's reputation, brand and business arising from Mr.

Kinzer's allegations which appeared designed to capitalize on the narrative that people are not going to fly on planes they do not believe are safe no matter how inexpensive the fares are. On the other hand, the harm to Mr. Kinzer's career as a pilot and his ability to procure future employment from Allegiant's contentions about his conduct, fitness to serve as a pilot, and the embarrassment that may result from such allegations.

Finally, the Settlement Agreement should be sealed because failure to do so would defeat the very purpose of the arbitration proceedings and award as the arbitration was expressly held to protect the Settlement Agreement. Indeed, to decline to seal the Settlement Agreement merely because Petitioners, in complying with the statutory requirements associated with seeking confirmation of the award, provide the Settlement Agreement to the Court, would work a perverse result—i.e., allow Petitioners to obtain a protective order in arbitration, but effectively deny them the ability to avail themselves of the FAA's statutory remedies for reducing the Award to judgment because doing so would result in public disclosure of the very thing that the Award protects.

Thus, the Settlement Agreement should be sealed in its entirety.

## C.  Good Cause and Compelling Reasons Exist to Redact the Amended Award (ECF No. 1-6).

To protect the confidentiality of the Settlement Agreement, the parties engaged in confidential arbitration to resolve their dispute regarding production of the Agreement. *See* ECF No. 1-2 at ¶ 8. By necessity, the Amended Award discusses the terms of the Settlement Agreement and subsequent dispute. As a result, the Arbitrator specifically ordered in the Amended Award that all portions of the Amended Award except those appearing under the heading "Award and Protective Order" must remain confidential and not be disclosed. *See* ECF No. 1-6 at p. 10 (ordering that all of the terms of the Amended Award except for the terms that appear on 8, 9, and 10 under the heading "Award and Protective Order" are to remain confidential in order to remain consistent with the Settlement Agreement). Thus, Amended Award's introductory paragraphs, background, discussion, and findings should remain confidential as its existence is the direct result of the Settlement Agreement and further explains the Settlement Agreement and its terms.

Allowing the entire Amended Award to appear on the public record would allow the public

to glean the substance of the Settlement Agreement's provisions. Given the history which led to the Settlement Agreement, this would again result in the information becoming a vehicle for improper purposes such as promoting public scandal as described above. Further, allowing the entire Amended Award to enter the public record would undermine the important public policy of encouraging settlements by subverting the parties' expectation and reliance in the confidentiality of the Settlement Agreement. *See Friedman*, Case No.: 2:18-cv-00857-JCM-VCF, at *5; *United Rentals, Inc.*, No. 2:12-cv-01876-JCM-VCF, 2012 WL 5418355, at *1. Thus, good cause and compelling reasons exist to redact the Amended Award.

The request to redact the Amended Award is sufficiently narrow because it allows the enforceable Award and Protective Order section of the Amended Award to appear on the public record appropriately balancing public access with the Parties' compelling interests. Thus, the Amended Award should be redacted such that only the Award and Protective Order section on pages 8-10 of the Amended Award should be placed on the public record.

**D. Good Cause and Compelling Reasons Exist to Redact the Application (ECF No. 1) and the Instant Motion to Seal.**

Similarly, the Application to Confirm Arbitration Award and this Motion to Seal necessarily discuss the terms and substance of the Settlement Agreement as well as information contained in the confidential sections of the Amended Award including information regarding the events and circumstances leading to the Settlement Agreement. Because the parties relied on the confidentiality of the Settlement Agreement and subsequent arbitration relating to the Settlement Agreement, all references to the content of Settlement Agreement and Amended Award should be redacted from the Application and this Motion. This request is sufficiently narrowly tailored because the remainder of the Application and this Motion allow the public to understand the basis of the Application and this Motion without the substance of information that has been ordered protected by the Arbitrator or is otherwise confidential. *See Trujillo*, No. 2:15-cv-01362-MMD-PAL, at *3 (noting that the court may weigh the public interest in understanding the judicial process as a relevant factor to the compelling reasons standard).

### III.   <u>CONCLUSION</u>

Based on the foregoing, Allegiant respectfully requests that the Court grant its Motion for Leave to File Documents Under Seal such that the Settlement Agreement is sealed, and the Amended Award, Application and this Motion are redacted as specified herein.

DATED this 7th day of September, 2021.

JACKSON LEWIS P.C.

*/s/ Joshua A. Sliker*
JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
300 S. 4th Street, Suite 900
Las Vegas, Nevada 89101

*Attorneys for Petitioners Allegiant Travel Co.*
*and Allegiant Air, LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I am an employee of Jackson Lewis P.C. and that on this 7<u>th</u> day of September, 2021, I caused to be served via the Court's CM/ECF Filing, a true and correct copy of the foregoing **PETITIONERS' MOTION FOR LEAVE TO REDACT OR FILE CERTAIN DOCUMENTS UNDER SEAL** to the following:

Douglas Desjardins
THE PANGIA LAW GROUP
1717 N St., NW
Third Floor
Washington, DC 20036
dpd@pangialaw.com

*/s/ Kelly Chandler*
Employee of Jackson Lewis, P.C.